UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIRST NATIONAL PETROLEUM CORPORATION, | § § § § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-97 |
| | § | |
| OAO TYUMENNEFTEGAZ, | § § | |
| Respondent. | § § | |

## ORDER

Before the Court are Respondent's Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion") (Doc. #10), Petitioner's Response (Doc. #13), Respondent's Reply (Doc. #20), and Petitioner's Petition and Memorandum of Law to Confirm Arbitral Award (the "Petition") (Doc. #1, Ex. 1). Having reviewed the parties' arguments and applicable legal authority, the Court grants the Motion.

**I.      Background**

Petitioner First National Petroleum ("Petitioner" or "FNP") initiated this action to confirm a 2018 arbitral award in its favor against Respondent OAO Tyumenneftegaz ("Respondent" or "TNG") (the "Award"). Doc. #1, Ex. 1. At issue in the arbitration were various disagreements over the performance of a contract between FNP and TNG to establish a joint venture "for the comprehensive development of the Kalchinsk oil field and adjacent territories in [the] Tyumen region of Russia" (the "Agreement"). Doc. #1, Ex. 1 ¶ 6; Doc. #10 at 3; Doc. #14, Ex. I § 1.1. Ultimately, after the arbitration panel held that FNP was entitled to damages for TNG's breach of certain provisions of the Agreement and of its duty to loyalty owed under the Agreement, the panel awarded FNP "USD 70,000,000.00, together with interest" for the breach and "EUR 264,700.00, . . . plus interest" for arbitration costs. Doc. #1, Ex. 1 at March 30, 2018 Final Award ¶¶ 152, 368.

Notably, pursuant to the Agreement, the arbitration took place in Stockholm, Sweden, in accordance with the Rules of the Institute of the Stockholm Chamber of Commerce.[1]

Now, Respondent TNG moves to dismiss FNP's Petition to confirm the Award in the Southern District of Texas for lack of personal jurisdiction. Doc. #10. Importantly, it is undisputed that FNP is an entity organized under Texas law and its principal place of business has been in Houston, Texas. Doc. #13, Ex. B ¶¶ 3, 5. It is also undisputed that TNG is an "oil-production company registered in the Tyumen Region of the Russian Federation" and does not hold any assets or have any employees in Texas. Doc. #10, Ex. A ¶¶ 4, 9–10.

## II. Legal Standards

### a. Confirming Foreign Arbitral Awards

Petitioner FNP initiated this action to confirm the Award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") and the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 201 *et seq.* Doc. #1, Ex. 1. The FAA provides that "[t]he district courts of the United States . . . shall have original jurisdiction over such an action or proceeding." 9 U.S.C. § 203. Further, a district "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.* § 207. However, "[e]ven though the . . . Convention does not list personal jurisdiction as a ground for denying enforcement, the Due Process Clause requires that a court dismiss an action, on motion, over which it has no personal jurisdiction." *First Inv. Corp. of*

---

[1] The Agreement provides that "when . . . discrepancies or disputes [between the parties] cannot be settled by friendly negotiations, such discrepancies or disputes should be ultimately settled by [] arbitration composed of three arbitrators. The arbitrators shall be appointed and act in accordance with the Rules of the Institute of Arbitration of the Chamber of Commerce in Stockholm. The place for arbitration should be Stockholm, Sweden. Any decision of the arbitrators shall be final." Doc. #14, Ex. I § 9.2.

2

*Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 749 (5th Cir. 2012), *as revised* (Jan. 17, 2013).

### b. Personal Jurisdiction

In a federal court sitting in Texas, a "plaintiff must overcome two hurdles to justify the exercise of jurisdiction over a nonresident defendant." *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992). First, under the "minimum contacts" test, the plaintiff must "establish that the defendant purposefully availed itself of the privilege of conducting activities in the forum, thus invoking the benefits and protections of its laws. Those activities, whether direct acts in the forum or conduct outside the forum, must justify a conclusion that the defendant should reasonably anticipate being called into court there." *Id.* (internal citations omitted). Second, the plaintiff must "show[] that the exercise of personal jurisdiction over the nonresident comports with fair play and substantial justice." *Id.*

Although the Supreme Court has divided the minimum contacts analysis into two categories—general and specific jurisdiction, in this case, the Court shall only address Respondent's challenge to specific jurisdiction.[2] "Specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation. For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 432–33 (5th Cir. 2014) (internal citation omitted).[3]

---

[2] Respondent TNG's Motion challenges both general and specific jurisdiction. Doc. #10 at 10–14. However, as Petitioner FNP concedes, its Response does not address the challenge to general jurisdiction. Doc. #13 at 3 n.9 ("For the purposes of this Response, FNP will focus on specific jurisdiction . . . ."). Accordingly, the Court hereby GRANTS the Motion as to TNG's challenge to general jurisdiction.

[3] Without citing any binding authority, Respondent TNG asserts that "specific jurisdiction is not available" in actions wherein a party seeks to confirm a foreign arbitral award under the FAA.

3

In a breach of contract case, a "plaintiff's or third party's unilateral activities cannot establish minimum contacts between the defendant and forum state. . . . [Additionally,] merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).[4] Instead, a nonresident defendant establishes "[minimum] contact[s] with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state." *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 n.6 (5th Cir. 2003) (citing *Mississippi Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1007 (5th Cir. 1982)). Importantly, "[m]ere foreseeability, standing alone, does not create jurisdiction." *Moncrief Oil Intern. Inc.*, 481 F.3d at 313. But, jurisdiction may be exercised if, in addition to foreseeability, the hub of the parties' activities as outlined by agreement lies within the forum state. *Id.*; *see also Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985). Courts may also give weight to the existence of a forum-selection clause or choice-of-law provision when determining whether the defendant had reason to believe it could not be haled into court in the forum state. *See Moncrief Oil Intern. Inc.*, 481 F.3d at 313.

Ultimately, when demonstrating that a court has personal jurisdiction over the defendant, the plaintiff must only establish a *prima facie* case, not proof by a preponderance.[5] *Jones*, 954

---

Doc. #10 at 12. However, when the Fifth Circuit held that the principles of personal jurisdiction apply to such confirmation proceedings in *First Inv. Corp. of Marshall Islands*, nowhere did the Fifth Circuit limit its jurisdictional analysis to general jurisdiction. *See* 703 F.3d at 749. Accordingly, the Court rejects TNG's argument.

[4] Similarly, the "exchange of communications between Texas and [elsewhere] in the course of developing and carrying out the contract [is] in itself also insufficient to constitute purposeful availment of the benefits and protections of Texas law." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986).

[5] Pointing to two non-binding district court opinions, one from this Circuit and one from another, Petitioner FNP posits that a court may attribute the contacts of FNP to its co-venturer TNG for purposes of establishing personal jurisdiction. Doc. #13 at 5. But such an approach—that is,

4

F.2d at 1067. Additionally, "[a]ny genuine, material conflicts between the facts as established by the respective parties' appropriate affidavits, and other proper summary judgment type evidence, must be resolved in [the plaintiff's] favor." *Id.*

### III. Analysis

To determine whether the Court can exercise its jurisdiction over Respondent TNG, the Court must evaluate TNG's conduct in the underlying dispute. In other words, the Court must determine whether the conduct of TNG that gave rise to FNP's breach of contract claims created a substantial connection with Texas. *See Monkton Ins. Services, Ltd.*, 768 F.3d at 432–33; *Cent. Freight Lines Inc.*, 322 F.3d at 382 n.6. Because the Court must resolve any genuine, material conflicts between the facts in FNP's favor, below, the Court evaluates TNG's Texas-related conduct as presented in FNP's submitted evidence. That conduct includes the following:

- In 1990 at an oil and gas conference in Houston, Texas, the chairman of TNG Yuri Vershinin expressed an interest to FNP in "partnering with a Houston-based business in order to develop certain oilfields in western Siberia." Doc. #13, Ex. A ¶ 3;
- In 1992, FNP and TNG negotiated various aspects of the Agreement in Houston, Texas, and executed the Agreement a month later in Russia. *Id.*, Ex. A ¶ 4; *Id.*, Ex. B ¶¶ 7, 9;
- The purpose of the Agreement was to establish a joint venture between FNP and TNG "for the comprehensive development of the Kalchinsk oil field and adjacent territories in [the] Tyumen region of Russia." Doc. #14, Ex. I § 1.1;
- The parties agreed to include a forum-selection clause, selecting Stockholm, Sweden, as the seat for any arbitration. *Id.*, Ex. I § 9.2;

---

looking at the unilateral activities and contacts of the plaintiff instead of the defendant's conduct—would turn well-established personal jurisdiction principles on their heads. *See Moncrief*, 481 F.3d at 311. Furthermore, the courts in both opinions explored the contacts between the defendant and its co-venturer (who was not the plaintiff) to determine whether that relationship revealed any contacts with the forum. *See Administrators of Tulane Educ. Fund v. Debio Holding, S.A.*, No. 99-2207, 2000 WL 877015 (E.D. La. June 29, 2000); *Glenwood Farms Inc. v. Ivey*, 335 F. Supp. 2d 133, 141 (D. Me. 2004). Neither opinion stands for the proposition that a co-venturer plaintiff's own conduct may be imputed to a co-venturer defendant to establish personal jurisdiction. *Id.* Accordingly, the Court rejects FNP's argument.

5

- The parties agreed to include a choice-of-law clause, selecting "Swedish substantive law and procedural rules for the analysis and interpretation of the [Agreement]." *Id.*, Ex. I § 9.3;
- FNP and TNG agreed that the joint venture would "be located in the city of Tyumen of [the] Russian Federation . . . ." *Id.*, Ex. I § 1.5;
- TNG attended board meetings for the joint venture in Houston, Texas, Paris, France, and Tyumen, Russia. Doc. #13, Ex. A ¶ 9; *Id.*, Ex. B ¶¶ 11, 13;
- TNG recommended that Viktor Osikin—who moved to Houston in 1992—be the managing director of the joint venture. *Id.*, Ex. B ¶ 11; and
- In Russia, TNG improperly held a board meeting for the joint venture without a representative of FNP in attendance and caused the liquidation of the venture without FNP's consent. *Id.*, Ex. D ¶ 142.

Given that the Fifth Circuit has held that personal jurisdiction principles apply to foreign award confirmation proceedings as they would in garden-variety actions where the federal court reaches the merits of the underlying dispute, *Moncrief* is instructive. *See First Inv. Corp. of Marshall Islands*, 703 F.3d at 749. In that case, a Texas plaintiff attempted to establish the court's jurisdiction over several Russian defendants. *Moncrief*, 481 F.3d at 311. Specifically, the Texas plaintiff argued that one of the Russian defendants had established minimum contacts by "(1) entering into contracts with [the plaintiff], (2) knowing from the outset that [the plaintiff] is a Texas resident, (3) acknowledging and approving of [the plaintiff's] substantial performance in Texas, and (4) sending an executive to visit Texas . . . ." *Id.* at 312. However, in holding that the plaintiff failed to demonstrate that the Russian defendant had established minimum contacts, the Fifth Circuit highlighted that "all the agreements were executed in Russia, with a Russian corporation, concerning a Russian joint venture, to develop a Russian gas field" and that the governing contract provided for arbitration in a foreign forum, under foreign law. *Id.* Importantly, although the Russian defendant could have foreseen that the plaintiff might perform some of its responsibilities in Texas, the hub of the parties' activities was outside of Texas. *See id.* at 313.

Similarly, here, FNP executed an Agreement in Russia, with Russian oil-production company TNG, concerning a joint venture located in Russia, to develop a Russian oil field.

Additionally, the Agreement provides that disputes are to be settled by arbitration under Swedish law in Stockholm, Sweden. Although TNG executives visited Houston to initiate conversations about the joint venture, negotiate aspects of the Agreement, and attend a board meeting, the hub of the parties' activities was clearly outside of Texas.[6]

### IV. Conclusion

Accordingly, because Petitioner FNP has failed to establish a *prima facie* case demonstrating that minimum contacts exist for the Court to exercise jurisdiction over Respondent TNG, the Court must dismiss this action to confirm the foreign Award.[7] *See Jones*, 954 F.2d at 1067; *First Inv. Corp. of Marshall Islands*, 703 F.3d at 749.

For the foregoing reasons, the Motion is hereby GRANTED, and the Petition is hereby DISMISSED.

It is so ORDERED.

MAR 1 2 2020
Date

The Honorable Alfred H. Bennett
United States District Judge

---

[6] Notably, aspects of the Agreement were also negotiated in Russia, and board meetings for the joint venture were also held in France and Russia.

[7] Because Petitioner FNP has failed to establish a *prima facie* case, the Court does not need to consider whether its exercise of jurisdiction would violate traditional notions of fair play and substantial justice. *Jones*, 954 F.2d at 1068.

7